**UNITED STATES of America,
Plaintiff,**

v.

**Franzo Wayne KING, Defendant.**

**Crim. No. 36778–SD.**

United States District Court
S. D. California, S. D.

Dec. 16, 1969.

Harry D. Steward, U. S. Atty., Phillip W. Johnson, Asst. U. S. Atty., San Diego, Cal., for plaintiff.

Rodney A. Klein, Virga, Fields & Klein, Sacramento, Cal., for defendant.

OPINION

RUSSELL E. SMITH, District Judge.

Defendant, having pled guilty, was convicted of importing marijuana in viola-

---

tion of 26 U.S.C. § 4755(a) (1) without paying the occupational tax imposed by 26 U.S.C. § 4751.[1] Defendant relying on Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), moves to withdraw the plea of guilty and set aside the judgment of conviction. I have heretofore denied the motion and I now file this opinion because of the importance of the question which *Leary* creates as to transactions occurring at our international borders. Counsel argue pro and con as to the retroactivity of the rule in *Leary*. If I thought that the rule of *Leary* applied to border transactions I would apply it retroactively, but for the reasons here stated I think Leary not applicable to any cases involving acts or failures to act at an international border.

In *Leary* defendant was convicted of transporting marijuana without payment of the tax required by 26 U.S.C. § 4741. The case involved a transfer of marijuana, the importation of which, if it was in fact imported, was complete at the time of the violation.

In this case the defendant was convicted of a violation of 26 U.S.C. § 4755(a) (1). Whatever may be the effect of *Leary* upon the manufacturing, producing, compounding, dealing in, dispensing, prescribing, administering and giving away portions of § 4751, *Leary* can have no effect on the importing provisions of that section.

No one questions the power of the United States to regulate and tax the flow of goods across its international borders and prescribe conditions under which goods may be imported.

Any person about to enter the United States from a foreign country is required to make up his mind whether he will declare the property which he brings with him or whether he will conceal it. In the ordinary circumstance if the property declared is the kind of contraband that cannot be brought into the United States, it will be seized and destroyed. So far as federal law is concerned there has been at that time no violation. If the goods may be imported for limited purposes, it may be that in order to accomplish that importation arrangements must be made to comply with various state and federal laws. In any event the importer who declares the goods and who intends to comply with federal and state law faces no federal criminal prosecution.

In two circumstances the act of declaring marijuana and registering under 26 U.S.C. § 4755(a) conceivably could afford some proof of a violation of state law. It might be said that an importer who had not secured a state license to possess marijuana would be subject to prosecution by the state for the possession of marijuana in that part of the state (if any) between the border and the customs office. Also if the well-intentioned importer importing for a use legal under state and federal law, such as a medicinal use, later fell from grace and used the marijuana for a purpose not licensed under state law the border declaration and registration could furnish evidence that he had in fact possessed marijuana. These possibilities are not sufficient to create Fifth Amendment rights and deprive the United States of its right to know what crosses the border or to impose conditions upon the admission to the United States of foreign goods.

It is, as a practical matter, unthinkable that a state would attempt to prosecute any person for possession of marijuana if the possession were nothing more than a border station possession of declared marijuana. Indeed, in the event that marijuana is contraband and held for destruction or is detained by the United States awaiting payment of federal occupation taxes and registration and compliance with state licensing laws it may well be that the possession is in the United States. If, however, it were

---

1. "Every person who *imports*, manufactures, produces, compounds, sells, deals in, dispenses, prescribes, administers, or gives away marihuana shall before engaging in any of the above-mentioned activities, and thereafter on or before July 1 of each year, pay the following special taxes respectively:"

necessary to hold that a state law authorizing such a prosecution created Fifth Amendment rights which protected the importer from disclosure, then it would at the same time be necessary to hold that state law invalid in that limited border situation under the doctrine of federal supremacy.

The cases of Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532 (1969) do not compel a contrary conclusion. None of these cases hold that every registration law which would furnish evidence in some kind of a criminal prosecution is invalid. The very careful preservation of the authority of the cases of United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1957) and Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) indicates that the essentially non-criminal may be required to keep records which may at some time serve to incriminate them. Perhaps it would be sufficient to distinguish this case from the cases cited on the ground that an importer who stands at the border, having declared the possession of marijuana has, by the very declaration placed himself in an essentially non-criminal class and therefore out of the reach of the Fifth Amendment.

However, the factual situation of the defendants in all of the cited cases was different from the factual situation of the defendant here. In the *Marchetti* and *Grosso* situation a gambler who is required to pay the tax declares his intention to engage in gambling, a widely prohibited activity. His present intention to commit unlawful acts may focus the attention of state officials upon him, and lead them to past violations. One who at the border discloses to the customs officials the possession of any kind of goods by the very disclosure evidences an intention to abide by rather than break the law.

In the Haynes situation the possessor of a firearm is required to register the firearm. Registration of the firearm which the possessor now has in hand would not in some "uncommon situations" indicate a violation of any other law. But the correlation "between the obligation to register and violations" is high. In short, the person who registers an in hand firearm has probably committed another crime of which the registration gives evidence. At the border the importer with marijuana in hand has not violated any federal law until there is a failure to disclose. Disclosures made for ordinary customs purposes or the occupational tax purposes of 26 U.S.C. § 4751 do not point to any present or past violations of state or federal law.

In *Leary* the marijuana was in hand. Had the defendant registered and paid the tax he would have revealed the present possession of marijuana which he could not legally possess in the state of Texas. The man at the border faces no such problem. For these reasons I believe that the doctrine of United States v. Leary *supra* does not apply in this case and that the judgment of conviction should not be set aside.